UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:12-CV-P197-R

JASON L. BANKS                                                                                          PLAINTIFF

v.

STEVE HILAND et al.                                                                                   DEFENDANTS

## MEMORANDUM OPINION

Plaintiff, Jason L. Banks, filed a *pro se*, *in forma pauperis* complaint (DN 7) and amended complaint (DN 14) pursuant to 42 U.S.C. § 1983.[1]  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

## I. SUMMARY OF CLAIMS

Plaintiff Banks is incarcerated at the Kentucky State Penitentiary (KSP).  Plaintiff Banks originally initiated this action with another inmate, Glenn D. Odom II.  The Court determined that the actions brought by the two Plaintiffs should be severed.  The instant case, therefore, concerns only Plaintiff Banks, hereinafter "Plaintiff."  The amended complaint sets forth those claims personal to Plaintiff and which the Court now considers to be the initiating complaint in this action (DN 7).  It names as Defendants the following KSP employees:  KSP doctor Steve Hiland; KSP APRN Chanin Hiland; Corrections Officers (COs) Chad Knight and Harlan Martin; Kentucky Department of Corrections psychiatrist Gingy Grider; KSP psychiatrist assistant Heather Losser; CO Eric W. Hampton; and John and Jane Doe.  Each is sued in their individual

---

[1]A plaintiff may amend its pleading once as a matter of course within 21 days of service, and service has not occurred in this case.  *See* Fed. R. Civ. P. 15(a)(1).

and official capacities.  The amended complaint (DN 14) adds APRN John Woods, CO Ray Vinson, and Diane Yeager, who works in KSP's mail room, as Defendants.  These Defendants are also sued in both their individual and official capacities.

Plaintiff alleges that on June 5, 2012, while in the outside recreation cage, he initially refused to stop speaking to another inmate and to back up to the cage as commanded by a CO.  Other COs arrived, among them Defendants Knight and Martin.  Plaintiff states that he then complied with the order to back up to the cage, and handcuffs and leg restraints were put on him.  He states that Defendants Knight and Martin then grabbed him and dragged him across the compound, with his right wrist being pulled up.  He states his head and left shoulder "were repeatedly rammed into the entrance door, walls, strip cages and concrete floor."  He alleges that on that date he was moved to the supermax unit.  He states that on June 19, 2012, he signed up for "medical" complaining of a dislocated left shoulder and a broken right wrist.  He states his requests for x-rays and pain medicine were denied and that he was never examined.

Plaintiff next makes allegations about a number of complaints of stomach pain beginning in July 2007, which resulted in his being given medication for "strong acid reflux and stomach pains."  However, he states that in May 2010, he was taken off of his stomach medication after he exposed himself to a female nurse.  He also complains about an episode in July 2010 in which he had severe stomach pains but was not treated for it.

Plaintiff alleges that in November 2011, he asked Dr. Hiland for medication for his dry face, but nothing was done.  He alleges that in December 2011, he again stopped Dr. Hiland because his face was breaking out and he had dry patches on his knees.  He states that he was given something for knee pain.  He alleges that on January 17, 2012, he asked Dr. Hiland and

Chanin Hiland to renew his bentyl stomach medication, but they refused to do so. He states that on January 31, 2012, his medication was taken because he had missed it on the day before. He states, "I had not done anything that called for my meds to be taken; once again I was subject to retaliation." He states that on March 29, 2012, he had severe stomach pains and chest pains. He states that he did not see anyone until he had gone five days without eating. He lists three white inmates who were taken to medical more quickly after they complained of symptoms similar to his.[2]

Plaintiff further alleges that on August 3, 2012, he stopped a nurse and Defendant Woods because he was having strong abdominal pains, vomiting, constipation, and was unable to keep anything down. However, he states, "Nothing was done."

Plaintiff states that on July 19, 2012, he wrote letters about Defendant Hampton's harassment of him and other inmates. He states that on August 17, 2012, Defendant Hampton sat on Plaintiff's "court call" and on the next day Defendant Martin shook down his cell, throwing away Plaintiff's personal property including pictures of his family. He states that on August 20, 2012, he filed a complaint about Defendant Hampton using a racial slur. He states that in September 2012, he filed another complaint regarding Defendant Hampton. He alleges that shortly thereafter, Plaintiff was moved to the "walk" where Defendant Hampton works and "picks on" the mentally ill inmates. He alleges that stress from Defendant Hampton's misconduct caused him to try to commit suicide. He also alleges that in retaliation for Plaintiff's filing complaints about him, Defendant Hampton set Plaintiff up with "some mattress string and wrote Plaintiff up."

---

[2] It appears from attachments submitted by Plaintiff that he is African American.

3

Plaintiff next alleges that on November 23, 2012, he had a bad headache and he was told by a nurse that aspirin and Tylenol were no longer given out. He states that these items are given out in other Kentucky prisons; therefore, he alleges a violation of his right to equal protection. Also in November 2012, he states that he asked about getting powder deodorant because the gel deodorant sold in the canteen makes him break out. He states that he had to go without deodorant for a long time and that it is a health hazard to make inmates use deodorant that makes them break out.

Plaintiff states that on November 7, 2012, Defendant Grider refused him medication because she blamed Plaintiff for his mental health problems. He states that he recently had another "episode" in which he tried to kill himself, after which Defendant Losser did not come talk to him for four days and Defendant Grider did not come talk to him for 14 days. He states, "[I]t is inappropriate to keep me to a cell butt naked with just a smock in a cold cell as punishment for several days with no other mental health treatment." He states that on December 17, 2012, he filed a grievance about how cold it is in the supermax unit year round and "no one has been given extra bedding and clothing appropriate for the temperature" and about being denied access to the law library.

Plaintiff alleges that on January 1, 2013, he filed a grievance on the mailroom for tearing off the address label on his incoming mail, making it so he could not respond. He alleges that this violates his First Amendment right and is a federal offense. He also alleges that it is a "no brainer that the mailroom is doing something to Plaintiff's outgoing and incoming mail" because his family and the federal and state courts have not received items he has sent and when he talks to his family on Saturday he has not received the mail they sent that week. He also complains

that there is no remembrance of Martin Luther King Day, no Black Entertainment Television, and no black doctors, nurses, teachers, caseworkers, and so forth at KSP. He states that he is charged just to look at case cites when "G.P." or indigent prisoners are not. He alleges that this practice violates his right to access to the courts.

Plaintiff asks for declaratory, injunctive, monetary and punitive damages. He attaches numerous exhibits to his complaint and amended complaint.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Official-capacity claims for monetary damages*

Plaintiff's claims against the state-employee Defendants in their official capacity are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims for money damages from these state officers in their official capacities fail to allege cognizable claims under § 1983. Moreover, Defendants are immune from monetary damages under the Eleventh Amendment. *See id.* The Court will dismiss the claims for monetary relief pursuant to §§ 1915A(b)(1) and (b)(2).

However, in *Will*, the Supreme Court noted that officials still may be sued for injunctive relief under § 1983 because "'official capacity' actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. The Sixth Circuit, in *McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000), followed this approach. There, the Sixth Circuit noted, "the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983." *Id.* at 757. Along with monetary damages, Plaintiff's complaint requests prospective injunctive. Consequently, Plaintiff's § 1983 action, insofar as it seeks injunctive relief against Defendants in their official capacities, is not barred by the Eleventh Amendment's grant of sovereign immunity. The Court therefore will consider whether to allow those claims to proceed in conjunction with considering Plaintiff's individual-capacity claims.

6

*Individual-capacity claims*

*Defendants Knight and Martin*

The Eighth Amendment prohibits cruel and unusual punishment, including inflictions of pain that are "'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal citations omitted). Not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id.* However, on the facts alleged in the complaint, *i.e.*, that Defendants Knight and Martin dragged him across the compound repeatedly ramming his head and shoulder into doors, walls, cages and the floor, the Court will allow the individual-capacity excessive-force claims against these Defendants to go forward.

*Medical claims*

Plaintiff alleges complaints of stomach pain beginning in July 2007, which resulted in his being given medication for "strong acid reflux and stomach pains," but that in May 2010, he was taken off of his stomach medication after he exposed himself to a female nurse. He also complains about an episode in July 2010 in which he had severe stomach pains but was not treated for it.

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KY. REV. STAT. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th

Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183. Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). Here, the original complaint in this case (filed jointly with inmate Odom) was dated August 10, 2012. Thus, any claims about alleged violations prior to August 10, 2011, are time-barred, and will be dismissed as such. Accordingly, Plaintiff's claims regarding the 2010 incidents will be dismissed as time-barred.

Plaintiff makes the following non-time barred claims about medical treatment. He alleges that in December 2011, he asked Dr. Hiland for medication for his dry face, but nothing was done. He alleges that in December 2011, he again stopped Dr. Hiland because his face was breaking out and he had dry patches on his knees but that he only was given something for knee pain. He alleges that on January 17, 2012, he asked Dr. Hiland and Chanin Hiland to renew his bentyl stomach medication, but they refused to do so. He states that on January 31, 2012, his medication was taken because he had missed it on the day before. He states that on March 29, 2012, he had severe stomach pains and chest pains. However, he states that he did not see anyone until he had gone five days without eating.

Plaintiff further alleges that on August 3, 2012, he stopped a nurse and Defendant Woods because he was having strong abdominal pains, vomiting, constipation, and was unable to keep anything down. However, he states, "Nothing was done."

Plaintiff alleges that on November 7, 2012, Defendant Grider refused him medication, because she blamed Plaintiff for his mental health problems. He states that he recently had another "episode" in which he tried to kill himself, after which Defendant Losser did not come talk to him for four days and Defendant Grider did not come talk to him for 14 days. He alleges, he has been kept in "a cell butt naked with just a smock in a cold cell as punishment for several days with no other mental health treatment."

The Eighth Amendment prohibits a punishment that violates civilized standards of decency or reflects unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). A viable Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the pain be sufficiently serious within the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted). The subjective component requires a plaintiff to show that the defendant acted with deliberate indifference to the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently culpable state of mind," where the officials were aware of and disregarded an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted).

The Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003)

(citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). There is nothing in Plaintiff's complaint to suggest that his complaints of a dry face and knees was anything more than *de minimis*. Moreover, he was given some medication for knee pain in answer to his complaint, although apparently it was not what he wanted. The courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* Thus, his claim regarding his dry face and knees will be dismissed for failure to state a claim.

On review, the Court will allow Plaintiff's individual-capacity claims for monetary and injunctive relief and official-capacity claims for injunctive relief against Dr. Hiland and Chanin Hiland for denial of his stomach medication and for denial of medical treatment on August 3, 2012; individual-capacity claims for monetary and injunctive relief and official-capacity claims for injunctive relief against Defendant Woods for denial of medical treatment on August 3, 2012; and against Defendants Grider and Losser in their individual capacity for monetary and injunctive relief and official capacity for injunctive relief for denial of mental health treatment.

*Claims against Defendant Hampton*

The Sixth Circuit has held that harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support

an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Thus, to the extent that Plaintiff bases his claim against Defendant Hampton solely on his allegedly verbally abusive behavior, that claim will be dismissed.

Plaintiff also alleges that Defendant Hampton retaliated against him when shortly after he filed a complaint against Defendant Hampton in September 2012, Plaintiff was moved to the "walk" where Defendant Hampton works and "picks on" the mentally ill inmates. He alleges that stress from Defendant Hampton's misconduct caused him to try to commit suicide. He also alleges that in retaliation for Plaintiff's filing complaints about him, Defendant Hampton set Plaintiff up with "some mattress string and wrote Plaintiff up."

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Plaintiff alleges that he was engaged in protected conduct – filing legitimate grievances. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). However, he does not allege that Defendant Hampton was responsible for where he was moved. The causation prong of the retaliation analysis is therefore missing with regard to Plaintiff's claims about retaliation in the form of being moved. Plaintiff sufficiently alleges

11

retaliation with regard to Defendant Hampton allegedly setting him up with mattress string. The Court will allow that claim to proceed against Defendant Hampton in his individual capacity for monetary and injunctive relief and in his official capacity for injunctive relief.

*Defendants Vinson and John and Jane Doe*

Plaintiff makes no allegations against these Defendants. Some factual basis for a claim must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The specific facts must explain how the defendant is personally responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Plaintiff's complaint fails to do so with regard to with regard to these Defendants. As such, the claim against Defendants Vinson and John and Jane Doe must be dismissed for a failure to state a claim. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam) (stating that personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).

*Equal protection claims*

Plaintiff alleges that on November 23, 2012, he had a bad headache and he was told by a nurse that aspirin and Tylenol was no longer given out. He states that they are given out in other Kentucky prisons; he alleges this disparity is a violation of his right to equal protection. In fact, Plaintiff has failed to state an equal protection claim relating to not being given aspirin or Tylenol for free. *See Harris v. McRae*, 448 U.S. 297, 323 (1980) (indigents are not a suspect class for an equal protection claim); *United States v. King*, 62 F.3d 891, 895 (7th Cir. 1998) (prisoners are not a suspect class for an equal protection claim). This claim will be dismissed.

Plaintiff also states that on March 29, 2012, he had severe stomach pains and chest pains.

He states that he did not see anyone until he had gone five days without eating. He lists three white inmates who were taken to medical after they complained of symptoms similar to his. The Court will allow this equal protection claim to go forward against Dr. and Chanin Hiland in their individual capacities for monetary and injunctive relief and in their official capacities for prospective injunctive relief.

*Conditions of confinement*

Plaintiff states that on December 17, 2012, he filed a grievance about how cold it was in the supermax unit year round and "no one has been given extra bedding and clothing appropriate for the temperature." The Constitution does not mandate comfortable prisons. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[C]onstitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmate's health." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1122-23 (M.D. Tenn. 1982).

This is not a situation in which Plaintiff alleges that prison officials exposed him to temperatures that were close to freezing and failed to provide him adequate clothing and blankets. *See Franklin v. Franklin*, No. 97-4365, 2000 WL 687434, at *4 (6th Cir. May 16, 2000) (holding that allegations that prison officials exposed prisoner to temperatures that were close to freezing and failed to provide him adequate clothing and blankets alleged a constitutional violation). Further, it does not appear that Plaintiff has any basis for his assertion regarding cell temperature other than the fact that he felt cold. *See Payette v. Trierweiler*, No. 2:10-cv-8, 2010 WL 3937158, at *7 (W.D. Mich. Oct. 4, 2010) (concluding that prisoner's claim regarding cold cell temperature did not state a constitutional violation where prisoner had no basis for his assertion as to the cell temperature except that he felt cold). Moreover, Plaintiff

13

alleges no physical injury due to the allegedly cold temperatures. *See Watson v. Curley*, No. 2:12-cv-259, 2012 WL 6019498, at *4 (W.D. Mich. Dec. 3, 2012) (noting that plaintiff had failed to allege physical injury in claim regarding cold temperature in prison). In short, Plaintiff has failed to state a claim with regard to the allegedly cold temperatures.

Plaintiff also complains that there is no remembrance of Martin Luther King Day, no Black Entertainment Television (B.E.T.), and no black doctors, nurses, teachers, caseworkers, and the like at KSP. "The inability to watch B.E.T. cannot be characterized as the denial of the minimal measure of life's necessities, foreclosing any claim under the Eighth Amendment." *Thomas v. Madera Cnty. Dep't of Corrs.*, No. 1:06-cv-00649-AWI-YNP, 2010 WL 1444536, at *4 (E.D. Cal. Apr. 9, 2010). Nor does Plaintiff allege any facts suggesting a violation of the First Amendment violation. If he is complaining that jail officials are refusing to purchase a television broadcasting package that includes B.E.T., there is no authority that "states that the right to free speech imposes a duty on jail officials to purchase television channels such as B.E.T. whenever an inmates requests it." *Id.* at 5. Nor does he allege any facts that suggest that B.E.T. or celebration of Martin Luther King Day was being censored by jail officials. "A claim of racial discrimination in violation of the Equal Protection Clause requires a showing of discriminatory intent." *Thomas v. King*, No. CV 06 0649, 2008 WL 802475, at *3 (E.D. Cal. Mar. 24, 2008) (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)). Finally, Plaintiff has no standing to bring a claim regarding who is or is not hired to work at KSP.

Plaintiff also alleges that because the gel deodorant sold in the canteen makes him break out he had to go without deodorant for a long time. However, going without deodorant is not a deprivation of one of life's necessities. "Plaintiff does not allege that his ability to wash and

keep himself clean was impaired in any way. The use of deodorant does not improve . . . cleanliness; its usefulness is merely cosmetic." *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266 (W.D. Mich. July 19, 2010). Plaintiff has failed to state a claim with regard to this allegation. *Id.*; *see also James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that the denial of a comb, deodorant and cleaning supplies cannot be said to have jeopardized a prisoner's health); *Jordan v. Flowers*, No. 06 C 6333, 2008 WL 5211552 (N.D. Ill. Dec. 9, 2008) (lack of deodorant does not state a sufficiently serious condition that implicates a constitutional concern).

*Claims regarding mail*

Plaintiff alleges that on January 1, 2013, he filed a grievance on the mailroom for tearing off the address label on his incoming mail, making it so he could not respond. He also alleges that it is a "no brainer that the mailroom is doing something to Plaintiff's outgoing and incoming mail" because his family and the federal and state courts have not received items he has sent and when he talks to his family on Saturday he finds that he has not received the mail they sent that week.

An isolated incident of inadvertent mail interference does not state a claim that rises to the level of constitutional magnitude. *See, e.g., Reneer v. Sewell*, 975 F.2d 258, 260 (6th Cir. 1992); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *Morgan v. Montanye*, 516 F.2d 1367, 1370-71 (2d Cir. 1975); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974); *Searcy v. Culhane*, No. 09-CV-10174, 2009 WL 1864028, at *7 (E.D. Mich. June 29, 2009). Thus, Plaintiff's claim regarding the one-time removal of a return address is not actionable under § 1983.

Moreover, Plaintiff includes in the voluminous attachments to his complaint and amendement a memorandum from the warden dated July 3, 2012, in which it is stated that due to recent illegal activities and attempts to smuggle contraband in, all stamps and return address *labels* will be removed from incoming mail. That memorandum instructs that friends and family may be informed to *write* their return address on the envelope. Thus, not only does it appear that removal of the return label was an isolated occurrence, but it was one that is easily fixed by Plaintiff informing senders that their return addresses should be written on the envelope.

With regard to his claim that he is not receiving incoming mail and that his outgoing mail is not being received, prisoners have a constitutional right to receive mail, *see Merriweather v. Zamora*, 569 F.3d 307, 316 (6th Cir. 2009) (citing, *inter alia*, *Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir. 1986), and *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)), and the arbitrary or capricious interference with a prisoner's incoming mail can violate the First Amendment. *See id.*; *see also Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003). Additionally, procedural due process may protect Plaintiff's ability to receive and send mail. "[T]o state a claim based on the deprivation of procedural due process, the 'conduct must be grossly negligent, deliberately indifferent, or intentional.'" *Summers v. Bowers*, No. 1:10-cv-1137, 2011 WL 202089, at *7 (W.D. Mich. Jan.19, 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996)).

Reading Plaintiff's complaint liberally, as this Court is required to do on initial review, the Court will allow Plaintiff's claim that his mail is being interfered with to go forward against Defendant Yeager in her individual capacity for monetary relief and her official capacity for prospective injunctive relief.

*Access-to-courts claim*

Plaintiff states that on December 17, 2012, he filed a grievance about being denied access to the law library. He states that his being charged just to look at case cites when "G.P." or indigent prisoners are not violates his right to access to the courts.

To state a claim for denial of access to the courts, Plaintiff must allege that particular actions of Defendants prevented him from pursuing, or caused the rejection of, a specific non-frivolous direct appeal, habeas petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In other words, he must demonstrate "actual injury" by showing his underlying claim was non-frivolous, and that Defendants frustrated or impeded it. *Lewis*, 518 U.S. at 353. Here, Plaintiff has not done so.

Moreover, the constitutional right of access to the courts does not entitle prisoners to free copies. *See, e. g., Bell Bey v. Toombs*, No. 93-2405, 1994 WL 105900, *2 (6th Cir. Mar. 28, 1994). Plaintiff must allege Defendants' actions actually prevented him from pursuing or caused the rejection of his underlying action, which he has not done. This claim will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will by separate Order dismiss Plaintiff's official-capacity claims for monetary damages; all claims against Defendant Vinson and John and Jane Doe; his medical claims concerning incidents from before August 10, 2011; his claim regarding dry face and knees; his claim against Defendant Hampton for abusive language; his equal-

17

protection claim related to aspirin and Tylenol; his conditions-of-confinement claims; his claim relating to the tearing off of a return address label; and his access-to-courts claims. The Court will enter a Scheduling Order to govern the development of Plaintiff's remaining claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009